# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID BRANDON, | : | |
| Plaintiff, | : | CIVIL ACTION NO. 18-5643 |
| v. | : | |
| CARISSA TILLITSON, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

Smith, J.                                                January 9, 2019

  The *pro se* prisoner plaintiff has filed this action under 42 U.S.C. § 1983 against his probation officer (the only named defendant listed in the caption), the probation officer's supervisor, and a county probation and parole office. His claims appear to arise out of multiple instances where he violated the terms of his probation despite his attempts to obtain court-ordered outpatient treatment. He alleges that his probation officer committed perjury during at least one of the violation hearings. He has applied for leave to proceed *in forma pauperis*.

  The court will grant the plaintiff leave to proceed *in forma pauperis*, but must dismiss the complaint because (1) the Eleventh Amendment bars the claims against the county probation and parole office, (2) the county probation and parole office is not a "person" subject to suit under section 1983, (3) the probation officer is entitled to absolute witness immunity for any testimony she provided during the violation hearings, and (4) *Heck v. Humphrey*, 512 U.S. 477 (1994) bars the plaintiff's claims concerning completed violation proceedings because the publicly available dockets do not show that he was successful in challenging those proceedings and he has not alleged such success. Nevertheless, as the plaintiff is proceeding *pro se*, the court will provide him with leave to file an amended complaint regarding any claims that he would seek to pursue against his

probation officer or her supervisor, to the extent that *Heck* and absolute witness immunity do not bar the claims.

## I. ALLEGATIONS AND PROCEDURAL HISTORY

On December 31, 2018, the clerk of court docketed an application for leave to proceed *in forma pauperis* (the "IFP Application"), prisoner trust fund account statement, and a complaint filed by the *pro se* plaintiff, David Brandon ("Brandon"). *See* Doc. Nos. 1, 2, 4. In the complaint, Brandon names Carissa Tillitson ("Tillitson") as the only defendant in the caption, even though he also identifies the Delaware County Adult Probation and Parole Department ("DCAPPD") and Tillitson's supervisor as defendants in the body of the complaint.[1] *See* Compl. at ECF pp. 3, 4. Brandon is asserting claims under 42 U.S.C. § 1983. *See id.* at ECF p. 5. Brandon is currently incarcerated at the George W. Hill Correctional Facility ("GWHCF"). *See id.* at ECF p. 4.

According to his allegations, Brandon was released from GWHCF in February 2018 after being court-ordered to attend an outpatient drug treatment program. *Id.* at ECF p. 9. Brandon timely complied with the state court's order by registering in an outpatient program at the Chester Community Hospital. *See id.*

On his first day at the hospital, hospital staff asked Brandon to provide a urine sample. *See id.* Brandon did so, and he told the group facilitator that he had "used cocaine within the last 10 day[s] and that [he] may have a dirty urine." *Id.* The facilitator told Brandon to continue to come to the group while they awaited the results. *See id.*

The next day, Brandon had an appointment with his probation officer, Tillitson. *See id.* She asked him to give a urine sample "after arguing with [him] about not registering and attending

---

[1] Brandon's failure to name DCAPPD and Tillitson's supervisor as defendants in the caption of the complaint violates Rule 10(a) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties.").

2

the outpatient program." *Id.* The urine sample was dirty, and Brandon "explained to [Tillitson] and her supervisor that [he] did do what was ordered." *Id.* The supervisor told him that "she would not violate [him]." *Id.* Brandon claims that even though he was telling the truth about attending outpatient treatment, he "was violated & incarcerated for 21 days." *Id.*

After the 21 days of confinement, Brandon was released from GWHCF and court-ordered to register at an outpatient treatment center within seven days. *See id.* at ECF p. 10. He again registered with the Chester Community Hospital's outpatient program. *See id.* A woman at the hospital who was registering Brandon "actually called [Tillitson] because [Brandon] also had an appointment with her in which [he] would be late for." *Id.* This employee explained to Tillitson that Brandon would be late due to his registration. *See id.* When Brandon eventually arrived at Tillitson's office, she had him provide another urine sample. *See id.* The urine sample was dirty, and Tillitson "violated [him,] incarcerating [him] immediately." *Id.*

Brandon complains that his immediate incarceration prevented him from seeing whether outpatient treatment would help him. *See id.* He had previously spent 15 years clean from drugs and had only recently relapsed. *See id.*

Brandon spent 75 days at GWHCF before he was released and court-ordered to attend a rehabilitation program at Bowling Green Brandywine. *See id.* He spent 25 days there before being administratively discharged. *See id.* He was then immediately returned to GWHCF. *See id.*

Three weeks later, Brandon appeared for a *Gagnon I* hearing.[2] *See id.* Brandon claims that "a lot of false accusations were given about [him] during the hearing." *See id.* For example,

---

[2] *See Gagnon v. Scarpelli*, 411 U.S. 778 (1973) (concluding that probationer is "entitled to a preliminary and a final revocation hearing"); *see also Commonwealth v. Heilman*, 876 A.2d 1021, 1026 (Pa. Super. 2005) ("When a parolee or probationer is detained pending a revocation hearing, due process requires a determination at a pre-revocation hearing, a *Gagnon I* hearing, that probable cause exists to believe that a violation has been committed. Where a finding of probable cause is made, a second, more comprehensive hearing, a *Gagnon II* hearing, is required before a final revocation decision can be made." (citation omitted)); *Commonwealth v. Sanders*, No. 7403-1487, 1980 WL

3

he alleges that Tillitson claimed that he refused outpatient treatment, that he was resistant to treatment, and that he refused to comply with treatment. *See id.* at ECF pp. 10–11. Brandon claims that these were "bold face lie[s because he has] signed documents from the facility stating [he] agree[d] to outpatient [treatment] and the things [he was] willing to do to maintain a healthy lifestyle." *Id.* at ECF p. 11. He argues that Tillitson "perjured herself when she made these statements at [his] *Gagnon I* hearing." *Id.* (emphasis added). As relief, Brandon asks that DCAPPD be investigated.[3] *See id.*

The court notes that public dockets indicate that in 2009, Brandon pleaded guilty to several charges related to possession of child pornography, and the trial judge sentenced him to a term of confinement followed by a term of probation. *See* Docket, *Commonwealth v. Brandon*, No. CP-23-CR-8097-2008 (C.P. Delaware). On August 26, 2014, Brandon had a *Gagnon I* hearing, after which he was placed on "EMP." *Id.* It appears that final disposition was deferred for six months to allow Brandon "time to comply." *Id.* Brandon had another *Gagnon I* hearing on December 21, 2017, and another on July 27, 2018. A "sentence/penalty" was imposed on September 18, 2018.[4] *See id.* Another *Gagnon I* hearing was held on December 4, 2018. *See id.*

## II. DISCUSSION

### A. The IFP Application

Regarding applications to proceed *in forma pauperis*,

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an

---

194264 (C.P. Philadelphia Nov. 1, 1980) ("The purpose of a Gagnon I hearing is to ensure against detention of a parolee or probationer on allegations of violations that have no foundation of probable cause.").

[3] Brandon also alleges that he had another experience with DCAPPD in 2014 when DCAPPD told Reading Specialists to submit a report showing that he was noncompliant, even though that was not the truth. *See* Compl. at ECF p. 11.

[4] While unclear, it appears as if Brandon received a sentence of incarceration for a minimum of six months to a maximum of 23 months. *See* Docket, *Commonwealth v. Brandon*, No. CP-23-CR-8097-2008 (C.P. Delaware).

4

> affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch*[ *v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things, that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131-32 (3d Cir. 2008) (per curiam) (footnote omitted).

The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable to pay the costs of suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the litigant seeking such status must establish that he is unable to pay the costs of his suit."). "In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. [The court must] review the affiant's financial statement, and, if convinced that he or she is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at 1084 n.5 (internal citations omitted).

Here, after reviewing the IFP Application and the inmate trust account statement, it appears that Brandon is unable to pay the costs of suit. Therefore, the court will grant him leave to proceed *in forma pauperis*.[5]

---

[5] As a prisoner, Brandon is obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

## B. Review of the Complaint Under 28 U.S.C. § 1915(e)(2)(B) and Sua Sponte Review for Lack of Subject-Matter Jurisdiction

Because the court has granted Brandon leave to proceed *in forma pauperis*, the court must engage in the second part of the two-part analysis and examine whether the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal-- **(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or **(iii)** seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490 U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether a complaint is malicious, "[a] court that considers whether an action is malicious must, in accordance with the definition of the term 'malicious,' engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant." *Deutsch*, 67 F.3d at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted). In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)).

In addition, the court has the authority to examine the court's subject-matter jurisdiction *sua sponte*. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). As a plaintiff commencing an action in federal court, Brandon bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

### C. <u>Analysis</u>

To succeed on claims under section 1983, "a plaintiff must show a deprivation of a right secured by the Constitution and laws of the United States, and he must show that the deprivation was committed by a person acting under color of state law." *Bailey v. Harleysville Nat'l Bank & Trust*, 188 F. App'x 66, 67 (3d Cir. 2006) (per curiam) (citing *West v. Atkins*, 487 U.S. 42, 47 (1988)). The court will consider Brandon's claims in turn.

### 1. Claims Against DCAPPD

Brandon has identified DCAPPD as a defendant in the body of the complaint, even though he did not list it in the caption of the complaint. *See* Compl. at ECF pp. 3, 4. The Eleventh Amendment prohibits suits in federal courts against state agencies and departments.[6] *See Pinckney v. Superior Ct. of N.J. Essex Vicinage Family Div.*, -- F. App'x --, No. 18-2437, 2018 WL 6595153, at *2 (3d Cir. Dec. 14, 2018) ("Eleventh Amendment immunity protects not only states but also state agencies and departments, such as the Family Court here, that are so intertwined with them as to render them arms of the state." (citation and internal quotation marks omitted)). County probation and parole departments, which are part of Pennsylvania's judicial districts, are state entities for purposes of Eleventh Amendment immunity. *See Haybarger v. Lawrence Cty. Adult Prob. and Parole*, 551 F.3d 193, 198 (3d Cir. 2008) ("We have held that Pennsylvania's judicial districts, including their probation and parole departments, are entitled to Eleventh Amendment immunity. The Commonwealth vests judicial power in a unified judicial system, and all courts and agencies of the [unified judicial system] are part of the Commonwealth government rather than local entities. As an arm of the State, an individual judicial district and its probation and parole department are entitled to Eleventh Amendment immunity." (internal citations omitted)); *Henry v. Philadelphia Adult Prob. and Parole*, 297 F. App'x 90, 91 n.1 (3d Cir. 2008) ("[Philadelphia Adult Probation and Parole ("PAPPD")] is an arm of the Commonwealth of Pennsylvania and not the City of Philadelphia. The Eleventh Amendment would have barred any claims on appeal against the PAPPD." (internal citation omitted)); *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005) (concluding that judicial district has Eleventh Amendment

---

[6] The Eleventh Amendment serves as "a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996).

immunity).  Furthermore, DCAPPD is not a "person" subject to suit under section 1983.[7]  *See Beaver v. Del. Cty. Prob. and Parole*, Civ. A. No. 15-2784, 2016 WL 4366977, at *3, n.5 (E.D. Pa. Aug. 16, 2016) (concluding that Delaware County Probation and Parole "is not a 'person' who may be sued under § 1983" (citation omitted)).  Accordingly, Brandon cannot maintain his claims against DCAPPD.[8]

### 2. Claims Against Tillitson and Her Supervisor

Brandon asserts that Tillitson committed perjury by offering false statements during his most recent *Gagnon I* hearing.  *See* Compl. at ECF p. 15.  Tillitson, however, is entitled to absolute immunity for this claim.  *See Briscoe v. LaHue*, 460 U.S. 325, 345 (1983) (concluding that witnesses are absolutely immune from claims for damages based on testimony).  Accordingly,

---

[7] Section 1983 provides in pertinent part as follows:

> Every **person** who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

*Id.* (emphasis added).  As evidenced by a review of the statute, section 1983 "applies only to 'persons.'" *Fraser v. Pa. State Sys. of Higher Educ.*, No. CIV. A. 92-6210, 1994 WL 242527, at *5 (E.D. Pa. June 6, 1994), *aff'd*, 52 F.3d 314 (3d Cir. 1995).

[8] The court also recognizes that "Eleventh Amendment immunity is, however, subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (citation omitted).

As for the first exception to Eleventh Amendment immunity, Congress did not intend to abrogate Eleventh Amendment immunity by enacting 42 U.S.C. § 1983.  *See Quern v. Jordan*, 440 U.S. 332, 344–45 (1979) (stating that "§ 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States").  Concerning the second exception, the Commonwealth of Pennsylvania has enacted 42 Pa. C.S. § 8521(b), which expressly indicates that the Commonwealth has not waived its Eleventh Amendment immunity from suit in federal courts.  *See* 42 Pa. C.S. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); *see also Lavia v. Pa., Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that Pennsylvania has not waived Eleventh Amendment immunity).  For the final exception, even though Brandon has named an individual employee of DCAPPD as a defendant, he does not seek cognizable declaratory or injunctive relief for an ongoing constitutional violation.  Instead, he seeks an investigation of the DCAPPD (and perhaps Tillitson).  Accordingly, none of the exceptions apply here.

Brandon cannot maintain a claim that Tillitson provided false testimony during his *Gagnon I* proceeding.

While unclear, it appears that Brandon also seeks to hold Tillitson and her supervisor liable for past occasions where he was found to have violated the terms of his probation and was subsequently incarcerated. To the extent that Brandon is raising claims about concluded criminal proceedings, those claims are not cognizable at this time. In this regard,

> to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]

*Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)). The doctrine set forth in *Heck* has been extended to civil rights cases challenging parole and probation revocations. *See Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (applying *Heck* to claims arising from parole board's decision); *Burton v. Del. Cty. Ct. House*, Civ. A. No. 12-4175, 2012 WL 3223691, at *2 (E.D. Pa. Aug. 7, 2012) (applying *Heck* to claims arising from "alleged constitutional deficiencies in [plaintiff's] revocation hearing and the sentence he received for violating his probation").

The publicly available docket for Brandon's state criminal case indicates that he was found guilty of violating his probation on several occasions; nothing on the dockets indicates he was successful in challenging these concluded proceedings. As such, Brandon cannot maintain these

10

claims at this time,[9] and the court will dismiss any claims regarding any completed probation violation proceedings without prejudice to Brandon filing a new complaint only if he is successful in challenging those proceedings in state court or federal habeas proceedings.

To the extent Brandon is asserting claims that *Heck* or absolute witness immunity do not bar, the court cannot discern a basis for such claims at this time. As noted above, Brandon admits that he had two dirty urine samples, which led to his incarceration. From this, the court cannot discern a plausible false imprisonment claim, if Brandon is attempting to raise one. Nonetheless, given Brandon's *pro se* status, the court will give him leave to file an amended complaint with respect to any claims that he may wish to pursue against Tillitson and her supervisor, to the extent *Heck* or absolute witness immunity do not bar those claims.

### III.     CONCLUSION

For the foregoing reasons, the court will grant Brandon leave to proceed *in forma pauperis* and dismiss the complaint for the failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii) and for lack of subject-matter jurisdiction. The court will dismiss with prejudice Brandon's claims against DCAPPD and his claim that Tillitson provided false testimony.[10] The court will dismiss Brandon's claims challenging completed revocation proceedings, which *Heck* bars, without prejudice to his right to pursue them in a new lawsuit only if he is successful in challenging those proceedings in state court or federal habeas proceedings. To the extent that Brandon is asserting any claims against Tillitson and her supervisor which *Heck* or absolute witness immunity do not

---

[9] This determination does not change even if habeas corpus relief is still available to Brandon. *See Williams*, 453 F.3d at 179 ("[W]e conclude that [the plaintiff's] § 1983 action against the Parole Board members is foreclosed by *Heck* and reiterate that § 1983 suits that would otherwise be barred by *Heck* are not cognizable merely because habeas relief is no longer available to the plaintiff.").

[10] The court recognizes that a dismissal of a claim for lack of subject-matter jurisdiction is ordinarily a dismissal without prejudice. *See In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 155 (3d Cir. 1997) (citation omitted). In this instance, the court is dismissing the claims with prejudice because Brandon cannot bring his claims against DCAPPD as it is not a "person" subject to suit under section 1983.

bar, the court will dismiss them without prejudice to Brandon's right to file an amended complaint concerning those claims.[11]

The court will enter a separate order.

BY THE COURT:


_/s/ Edward G. Smith_
EDWARD G. SMITH, J.

---

[11] A district court should generally provide a pro se plaintiff with leave to amend unless amending would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule). In addition, "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).